# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **RAPHAEL BUTLER,** | CASE NO. 2:08-cv-192 |
| | JUDGE WATSON |
| Petitioner, | MAGISTRATE JUDGE KING |
| v. | |
| **EDWIN VOOHRIES, Warden,** | |
| Respondent. | |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's motion to dismiss, petitioner's traverse, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that respondent's motion to dismiss be **GRANTED** and that this action be **DISMISSED.**

## PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On March 9, 2001, police arrested Delwon Whatley in connection with an armed robbery and kidnapping that occurred at a Steubenville gas station earlier in the evening. For some time, police suspected that Whatley also participated in an armed robbery and break-in that occurred on August 12, 2000. In the August incident, one of the victims said that Whatley shot him with a small caliber handgun.
>
> During the interrogation that followed Whatley's arrest, he admitted his participation in both crimes and agreed to

cooperate with the police in their investigation of the other individuals involved. As part of that cooperation, Whatley implicated Appellant and Appellant's brother, John Viers, in the August 12, 2000, incident. Whatley pleaded guilty to an array of felony offenses in connection with the two incidents and, in exchange for his truthful testimony against Appellant and others involved in the respective incidents, received a substantially reduced sentence of seven years of imprisonment. (Dec.11, 2001, Trial Tr., pp. 103, 120-121, 160-161, 177).

With respect to the August 12, 2000, incident, Delwon Whatley served as the primary prosecution witness. Whatley testified that he told police he had ingested alcohol, cocaine and marijuana on that night. At some point he met up with Appellant, with whom he shared a social acquaintance. The two discussed the prospect of obtaining more drugs or at least locating money to purchase more drugs. According to Whatley, Appellant suggested that they might find both drugs and money at a house that his father owned on 411 Highland Avenue in Steubenville. It was rumored that the people living there sold drugs, and neither Whatley nor Appellant expected them to be home. (Dec. 11, 2001, Trial Tr., pp. 164, 170-171, 183). Along with Appellant's brother, they formulated a plan to break into the apparently empty house and steal whatever drugs or money they could find. While no one was expected to be at home, Appellant gave Whatley a handgun to take with him because, as Whatley stated at trial, "it's better to be safe than sorry." (Dec. 11, 2001, Trial Tr., p. 176).

Whatley recounted that the three arrived at the house in the very early hours of the morning. Appellant helped boost Whatley into the house through a broken window on the building's first floor. (Dec. 11, 2001, Trial Tr., p. 161). As he did so, Appellant cut himself on a shard of glass. (Dec. 11, 2001, Trial Tr ., p. 162). Police later found several drops of fresh blood on the downstairs windowsill from which they were able to secure samples suitable for DNA comparison that investigators eventually used to link Appellant to the scene. (Dec. 11, 2001, Trial Tr., pp. 98, 203-205).

Whatley then let the others inside through a downstairs

entrance and the three began to search the first floor. Whatley testified that Appellant tore the phone cord out of the wall and bit it in two, evidently so that no one could use the telephone to call for help. (Dec. 11, 2001, Trial Tr., p. 164). Unable to find the drugs or money they sought, Whatley moved to the second floor followed by John Viers. The record does not indicate where Appellant was at this point. It does not appear, though, that Appellant followed Whatley and Viers upstairs.

Whatley continued searching the house, admitting that he entered an upstairs bedroom where Joseph Barker and Josea Brown lay sleeping. Whatley saw money on the floor. He picked it up and smashed the room's overhead light with his handgun. Pointing the weapon at the newly awakened couple, Whatley shouted, "give it up," or "where's it at?" (Dec. 11, 2001, Trial Tr., p. 165). Without warning, Joseph Barker threw himself at Whatley and tried to wrestle the gun from him. The struggle over the weapon moved into the hallway. Whatley testified that as he pulled his arm away, the gun accidentally fired and a small caliber bullet passed completely through Barker's right upper arm. (Dec. 11, 2001, Trial Tr., p. 89, 165). Whatley and Viers fled downstairs. Locating Appellant on their way out, the three left the scene in Appellant's borrowed car.

Police arrived a short time later. During an interview with the first officer to reach the house, Barker did not initially acknowledge that he knew the intruders, while Brown, who was familiar with Whatley, identified him as Barker's shooter. (Dec. 11, 2001, Trial Tr., p. 218). Barker and Brown reported that the only item the intruders stole was a set of car keys belonging to Brown's father. The car itself was not taken. Initially, neither victim could identify the other men who entered their house that morning, but later testified that they recognized John Viers as the other intruder in their bedroom with Whatley. (Dec. 11, 2001, Trial Tr., pp. 135, 139, 149-150). Neither witness saw Appellant.

Based largely on Whatley's story, police eventually arrested and charged Appellant for his participation in the August 12, 2000, incident. In an indictment issued on June 6, 2001,

> Appellant was charged with burglary and two counts of aggravated robbery, each charge carrying its own firearm specification. Appellant was also charged under R.C. 2909.04(A)(3) for the destruction of property with intent to impair the ability of law enforcement and emergency personnel to function in their professional or emergency capacities.
>
> A jury convicted Appellant of burglary pursuant to R.C. 2911.12(A)(1); two counts of aggravated robbery in violation of R.C. 2911.01(A)(1), as well as specifications for brandishing a firearm relating to each offense. Appellant was acquitted on the charge brought pursuant to R.C. 2909.04(A)(3).
>
> On December 12, 2001, the trial court imposed an aggregate sentence of fifteen years of imprisonment. The court sentenced Appellant to eight years for burglary. The court merged the two armed robbery counts into concurrent four year terms, but ordered that Appellant serve that term consecutively to the burglary sentence imposed. The court merged the three firearm specifications into one, for which it imposed an additional consecutive term of three years. (Sentencing Tr., pp. 21-23). On December 17, 2001, Appellant filed a Notice of Appeal.

*State v. Butler*, 2003 WL 21500077 (Ohio App. 7th Dist. June 26, 2003). Represented by new counsel, petitioner filed a timely appeal. He asserted the following assignments of error:

> 1. THE TRIAL COURT ERRED IN ADMITTING CO-CONSPIRATOR'S TESTIMONY, WHERE THERE IS NO INDEPENDENT CORROBORATION.
>
> 2. EVIDENCE ADDUCED AT TRIAL WAS INSUFFICIENT AS A MATTER OF LAW TO CONVICT APPELLANT.
>
> 3. THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> 4. THE TRIAL COURT ERRED IN ENHANCING APPELLANT'S SENTENCE TO A MAXIMUM TERM WITHOUT FOLLOWING THE LAW.

> 5. THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT ON GUN SPECIFICATION WHERE THERE IS NO EVIDENCE EXCEPT THE TESTIMONY OF THE PRINCIPAL.

*See id.* On June 26, 2003, the appellate court affirmed the judgment of the trial court. *Id*. Petitioner did not file an appeal.

Petitioner later filed a motion for re-sentencing under *State v. Foster*, 109 Ohio St.3d 1 (2005). *See Exhibit 6 to Motion to Dismiss*. Although the trial court granted petitioner's request for re-sentencing, the appellate court reversed that judgment, and vacated the re-sentencing order:

> On May 26, 2006, Butler filed a "Motion for Resentencing" in the trial court alleging that his original sentence was inappropriate pursuant to the holding in State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856. The trial court conducted a "resentencing hearing" which resulted in the court's reimposition of the original sentence.
>
> Butler's sole assignment of error alleges:
>
> "The court erred in failing to follow the directives of the Ohio Supreme Court in *State v. Foster*."
>
> As a preliminary matter, this Court must first determine whether the trial court had jurisdiction to consider Butler's motion for resentencing. "Neither the rules of civil procedure nor the laws of Ohio recognize a motion for resentencing hearing and for correction of an erroneous sentence. Nevertheless, a court must categorize such an irregular motion in order for the court to know the criteria by which the motion should be judged." *State v. Butts* (May 23, 2006), 10th Dist. No. 05 AP-732, citing *State v. Bush,* 96 Ohio St.3d 235, 2002-Ohio-3993, at ¶ 10. A motion to correct a sentence falls within the definition of a petition for post-conviction relief under R.C.

2953.21(A)(1), where "it is a motion that (1) was filed subsequent to [the defendant's] direct appeal, (2) claimed a denial of constitutional rights, (3) sought to render the judgment void, and (4) asked for vacation of the judgment and sentence." *State v. Reynolds* (1997), 79 Ohio St.3d 158, 160. It would appear that Butler's motion was in fact a petition for post-conviction relief.

Pursuant to R.C. 2953.21, a petition for post-conviction relief is filed subsequent to the direct appeal of the conviction. R.C. 2953.21(A)(1) defines the criteria under which post-conviction relief may be sought:

"Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed the sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence * * *."

R.C. 2953.21(A)(2) provides that a petition for post-conviction relief must be filed "no later than 180 days after the date which the trial transcript is filed in the court of appeals in a direct appeal to the judgment of conviction or adjudication * * *. If no appeal is taken, the petition shall be filed no later than one hundred eighty days after the expiration of the time for the filing of the appeal."

Here, five years have passed since Butler's original appeal was filed and thus Butler's petition was clearly untimely. R .C. 2953.23 governs untimely and successive petitions for post-conviction relief and provides that a trial court may consider a second or successive petition for post-conviction relief only if the petitioner can demonstrate:

"(1) Both of the following apply:

"(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or,

subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

"(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence."

In this case, Butler's arguments contained in his motion pertained only to his sentence and how the decision in *Foster* impacted that sentence. Thus, this court must determine whether *Foster* represents the recognition of a new federal or state right that applies retroactively to appellant, thereby permitting him to file an untimely petition pursuant to R.C. 2953.23(A)(1)(a).

The United States Supreme Court in *United States v.. Booker* (2005), 543 U.S. 220, 125 S.Ct. 738, the case upon which the holding in *Foster* was based, held that its ruling regarding the sentencing guidelines was not to be applied retroactively to cases on collateral review, but was to apply only to cases on direct review. *Id.* at 268. Moreover, the Supreme Court of Ohio stated in *Foster* that its ruling only applies to cases pending on direct review. *Foster,* at ¶ 104. Therefore, a *Blakely* argument cannot be the basis for a petition for post-conviction relief because "a post-conviction proceeding is not an appeal of a criminal conviction but, rather, a collateral civil attack on the judgment." *State v. Steffen,* 70 Ohio St.3d 399, 410, 1994-Ohio-111, citing *State v. Crowder* (1991), 60 Ohio St.3d 151.

Moreover, R.C. 2953.23(A)(1)(b) only allows petitioners to claim a constitutional error in an untimely petition if the error affected his conviction or death sentence. The claimed constitutional error in this case affected neither. Butler was

found guilty by the jury of his crimes and any error addressed in *Foster* regarding how he was sentenced for those crimes does not affect that underlying conviction and he was not sentenced to death. "The plain language of R.C. 2953.23(A)(1)(b) does not extend to sentencing errors, except for those occurring within the capital punishment context." *State v. Barkley,* Summit App. No. 22351, 2005-Ohio-1268, at ¶ 11.

Finally, it is worth noting that we have recently held that a petitioner could not raise his *Foster* argument in a *timely* petition for post-conviction relief. See *State v. Mills,* 7th Dist. No. 06 BE 14, 2006-Ohio-7077, at ¶ 25.

Butler has not demonstrated that his untimely petition for post-conviction relief should have been entertained pursuant to the exception found in R.C. 2953.23(A). The trial court was, therefore, without jurisdiction to consider his untimely petition for post-conviction relief. Accordingly, Butler's sole assignment of error is meritless, the judgment of the trial court is vacated and the original sentence is reinstated.

*State v. Butler*, 2007 WL 1334543 (Ohio App. 7th Dist. April 25, 2007). Petitioner apparently did not file an appeal to the Ohio Supreme Court.

On October 5, 2007, petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). *Exhibit 12 to Motion to Dismiss*. Petitioner asserted as follows:

> 1. My counsel was ineffective for failing to protect my rightsecured [sic] and object to a sentence which is contrary to law.
>
> 2. My sentence and judgment of conviction is contrary to law upon the evidence.
>
> 3. Insufficient evidence to warrant such unlawful sentence.
>
> 4. I was denied my right to an appeal fairly.

*See Exhibit 13 to Motion to Dismiss*. On October 23, 2007, the appellate court denied

petitioner's Rule 26(B) application. *Exhibit 13 to Motion to Dismiss.* On February 6, 2008, the Ohio Supreme Court dismissed petitioner's subsequent appeal. *State v. Butler*, 116 Ohio St.3d 1510 (2008).

On March 3, 2008, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He executed the petition on February 22, 2008. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. Petitioner's Sixth and Fourteenth Amendment rights to effective assistance of counsel were denied.
>
> Trial counsel failed to challenge petitioner's convictions to the Ohio Supreme Court.
>
> 2. Petitioner's Sixth and Fourteenth Amendment rights to due process were denied when trial counsel and appellate counsel failed to file a motion to reopen original appeal.
>
> The trial court omitted judicial fact findings without submitting fact findings to a jury and proven beyond a reasonable doubt or admission by the petitioner to depart from the presumptive minimum concurrent sentence.

It is the position of the respondent that this action must be dismissed as barred by the one-year statute of limitations under 28 U.S.C. §2244(d).

## II. STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which became effective on April 24, 1996, imposes a one-year statute of limitations on the filing of habeas corpus petitions. 28 U.S.C. §2244(d) provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Petitioner's conviction became final on August 10, 2003, forty-five days after the appellate court's June 26, 2003, decision denying his direct appeal, when the time period expired to file a timely appeal to the Ohio Supreme Court. *See King v. Bell,* 378 F.3d 550, 553 (6th Cir.2004) (citations omitted). *Searcy v. Carter*, 246 F.3d 515, 518-19 (6th Cir.2001); *Marcum v. Lazarof,* 301 F.3d 480, 481 (6th Cir.2002); Ohio Supreme Court Rule of Practice II, Section 2(A). The statute of limitations expired one year later, on August 10, 2004.

Petitioner waited more than three and one half years later, until February 22, 2008, to execute the instant habeas corpus petition. Additionally, neither his May 26, 2006, motion for re-sentencing, nor his October 5, 2007, Rule 26(B) application tolled or otherwise affected the running of the statute of limitations, since the statute of limitations had already long since expired prior to the filing of such actions. "The tolling provision does not ... 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman v. Brigano,* 346 F.3d 598, 601 (6 Cir. 2003), citing *Rashid v. Khulmann,* 991 F.Supp. 254, 259 (S.D.N.Y. 1998); *Winkfield v. Bagley,* 66 Fed.Appx. 578, unpublished, 2003 WL 21259699 (6th Cir. May 28, 2003)(same). Further, petitioner has failed to allege any extraordinary circumstances that would justify equitable tolling of the statute of limitations for the time period at issue here. *See Jurado v. Burt,* 337 F.3d 638, 643 (6th Cir. 2003).

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** that respondent's motion to dismiss be **GRANTED** and that this action be **DISMISSED**.

If any party objects to this *Report and Recommendation,* that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made

herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).


December 11, 2008              *s/Norah McCann King*
                               Norah McCann King
                               United States Magistrate Judge